VALERIA STRICKLAND, Plaintiff-Appellant, *v.* DEPARTMENT OF REGISTRATION AND EDUCATION, Defendant-Appellee.

First District (1st Division)   No. 77-728

Opinion filed May 1, 1978.

2

Albert Koretzky, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Joseph D. Keenan, III, Assistant Attorney General, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

An amended complaint was filed with the Department of Registration and Education against Valeria Strickland (plaintiff), a licensed real estate salesman. (See Ill. Rev. Stat. 1975, ch. 114½, par. 115(e)29.) After a hearing the Real Estate Examining Committee filed findings of fact and conclusions of law finding plaintiff guilty of the offense charged and recommending suspension of plaintiff's license for three months. The Department of Registration and Education of Illinois approved and adopted the action of the committee and the license of plaintiff was accordingly suspended. After hearing upon plaintiff's complaint for administrative review, the circuit court affirmed the suspension. Plaintiff appeals.

In this court, plaintiff contends that the order was invalid because not entered upon findings and recommendations of a legally constituted examining committee; there was no competent or substantial evidence to support a finding of the examining committee regarding availability of housing in the western suburbs of Chicago on February 22, 1975, and the amended complaint failed to allege that certain real estate was available for purchase at the time plaintiff represented there was none.

Plaintiff's first contention is based upon the pertinent statute which provides that all of the functions, powers or duties of the Department of Registration shall be exercised by the Department only "upon the action and report in writing of the Examining Committee, designated by the Director of the Department. The Committee shall be composed of 7 persons * * *. The Commissioner shall act as Chairman of the Examining Committee, but without vote." (Ill. Rev. Stat. 1975, ch. 114½, par. 108(b).) Plaintiff urges that compliance with this statute requires a hearing before an examining committee consisting of seven persons.

■■ In this regard, plaintiff cites *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785. The city ordinance involved in *Homefinders* is basically different from the statute before us. As the supreme court noted, the ordinance in *Homefinders* "expressly provides that the power to impose penalties 'shall be vested in the *entire Board.*' (Emphasis added)." (*Homefinders, Inc.*, 65 Ill. 2d 115, 127.) On the contrary, the statute before us expressly provides, "The action of a majority of the Committee is sufficient authority upon which the Director may act." Ill. Rev. Stat. 1975, ch. 114½, par. 108(b).

In the case before us, the record shows that four members of the committee, including the chairman, were present at all of the administrative hearings. Two additional members of the committee were furnished with a transcript of the proceedings subsequent to the hearings and deliberated with the committee. The findings of fact and conclusions

of law were affirmatively adopted by five members of the committee, including the chairman, with one member dissenting. This demonstrates that the action was taken by a majority of the committee in accordance with the statute. In this regard, the court in *Homefinders, Inc.*, after reviewing American law on this subject, held, "that, in the absence of statutory provisions to the contrary, it is not necessary that testimony in administrative proceedings be taken before the same officers who have the ultimate decision-making authority. * * * The requirements of due process are met if the decision-making board considers the evidence contained in the report of proceedings before the hearing officer and bases its determinations thereon." (*Homefinders, Inc.*, 65 Ill. 2d 115, 128.) We conclude that the hearing was held in compliance with the statutory requirements.

Plaintiff's second contention requires a factual statement. Plaintiff was employed as a real estate salesman by Twin City Realty. Michael Cohen, an employee of the Community Relations Department of Oak Park, testified that he visited the real estate office about September 13, 1974. He spoke to plaintiff and identified himself as "Michael Richardson." He told plaintiff that he was presently living in Chicago and was looking for a home in the midwestern suburbs in a price range of $20,000 to $30,000. Plaintiff took two listings out of a book; she told the witness that these listings were located in Cicero and were an example of what he could buy within his price range. Plaintiff showed the witness a map on which she pointed out the suburbs of Cicero and Berwyn. She explained to the witness that he would not be interested in Oak Park because "the colored are living there and it's a changing neighborhood," but that this problem would not arise in Berwyn or Cicero. She told the witness that if black persons entered the office, "we send them to integrated areas."

Jack Woltjen, chief investigator for the Metropolitan Leadership Council, testified that on February 9, 1975, he went to the office of Twin City Realty. He spoke to Tom Zitser and George Michaels. He told them he was interested in purchasing a home in the western suburbs in the $30,000 to $35,000 price range. They gave him a listing book with a number of listings. He leafed through the book, looked at 30 or 40 listings of homes for sale, and selected a number of them in the Berwyn area. He was taken to Cicero to see one of the listed homes and was also given the listings. He informed the persons to whom he spoke that his name was Don Dunne and that he lived in Melvin, Illinois.

During Woltjen's testimony a member of the committee asked him:

"Q. These 25 or 30 listings that you said were given to you, 11 of them in Cicero, were any of them in Oak Park?"

Woltjen responded:

"A. No, sir."

Marc Jeanty, who is a black person, testified that he went to plaintiff's office and spoke to her on February 22, 1975. He told her he was interested in purchasing a home close by the intersection of Cermak and Cicero for approximately $45,000. He testified that plaintiff advised him that the firm had no listings available for houses of that type in the area. She suggested a home in Maywood in the $25,000 class and told him that this would be a suitable area for him. The same listing book which had been exhibited to the witness Jack Woltjen was available to plaintiff in her office at the time of the visit by Marc Jeanty on February 22, some 13 days later. In addition, as above shown, it appears that 11 of the listings therein were located in Cicero.

Upon this evidence, a majority of the examining committee found that plaintiff was guilty of violating the statute in that she had represented to a black person that real estate was not available for inspection, purchase or sale when, in fact, it was so available and that this had been done because of the race and color of the prospective customer. See Ill. Rev. Stat. 1975, ch. 114½, par. 115(e)29.

■■ Citation of authority is hardly necessary in support of the accepted rule that in this type of situation a reviewing court is limited "to ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence." (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) In addition, issues of credibility are not before us and, "[n]either the appellate court nor the trial court may substitute its judgment for that of the administrative agency." *Davern*, 47 Ill. 2d 469, 472.

■■■ The sole argument made by plaintiff is that, although the record shows that plaintiff had access to listings of homes for sale on February 9, 1975, there was no testimony that any of these homes were still for sale 13 days later at the time of Marc Jeanty's visit. Plaintiff cites *Bell Realty & Insurance Agency v. Chicago Commission on Human Relations* (1971), 130 Ill. App. 2d 1072, 266 N.E.2d 769, *leave to appeal denied* (1971), 46 Ill. 2d 593, in support of this argument. In *Bell*, the plaintiff was apparently inactive in the real estate business, and he showed the complainant only two listings. The complainant did not express dissatisfaction with the listings given her and did not request additional listings. (See *Bell*, 130 Ill. App. 2d 1072, 1077.) In our opinion, the situation in *Bell* is not at all comparable to the situation before us. In the instant case, the witness, Jack Woltjen, examined the listing book and selected approximately 30 homes that were described to him as being for sale in the area in question. It is hardly conceivable that all of these homes had been sold during the 13-day period which intervened until the conversation between plaintiff and Marc Jeanty. In the absence of countervailing evidence we should

assume that the condition—proved to exist at a given time—would continue to exist 13 days later. (See *Be-Mac Transport Co. v. Grabiec* (1974), 20 Ill. App. 3d 345, 355, 314 N.E.2d 242 and authorities there cited.) In our opinion, the factual conclusions reached by the majority of the examining committee and approved by the Department are not contrary to the manifest weight of the evidence.

Plaintiff's final contention is that the amended complaint filed against plaintiff in the administrative proceeding was insufficient because it failed to allege that plaintiff had listings available of the type requested by Marc Jeanty. The amended complaint alleged the contacts between plaintiff, Michael Cohen and Marc Jeanty, and charged that plaintiff had represented "that [no] real estate [was] available for inspection or purchase when, in fact, it is so available * * *." It is plaintiff's theory that the complaint failed to allege with particularity the availability of listings of the type described by Marc Jeanty.

■■ The law of Illinois does not require that the charges or complaint in an administrative proceeding be drawn with the same precision required of pleadings in a judicial proceeding. (*Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33, 37, 360 N.E.2d 536; *Kelly v. Police Board* (1975), 25 Ill. App. 3d 559, 564, 323 N.E.2d 624, *appeal denied* (1975), 58 Ill. 2d 596.) The basic requirement is that the charge in an administrative proceeding adequately advise the respondent as to the charges so that he will be able intelligently to prepare his defense. See *Carrao*, 46 Ill. App. 3d 33, 37; *Kelly*, 25 Ill. App. 3d 559, 564; *Schyman v. Department of Registration & Education* (1956), 9 Ill. App. 2d 504, 510-12, 133 N.E.2d 551, *cert. denied* (1957), 352 U.S. 1001, 1 L. Ed. 2d 545, 77 S. Ct. 557.

■■ Examination of the challenged complaint convinces us that it is fully adequate to advise plaintiff of the charges against her. The record also shows that plaintiff's able counsel, who represented her before the administrative body, the trial court, and this court had no difficulty whatsoever in presenting a most spirited defense. There is no evidence of prejudice to plaintiff by virtue of the amended complaint. We note also that the statute here involved " 'is not a penal measure, to be strictly construed against the State, but a broad statutory system,' which is remedial and therefore should be liberally construed." (*McKey & Poague, Inc. v. Stackler* (Docket No. 76-1158, filed April 14, 1978), ___ Ill. App. 3d ___, ___ N. E. 2d ___, quoting from *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 551, 552, 370 N.E.2d 1198.) The complaint was therefore legally adequate. The judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.